**United States Bankruptcy Court, Northern District of Illinois**

| Name of Assigned Judge | A. Benjamin Goldgar | CASE NO. | 21 B 8085 |
|---|---|---|---|
| **DATE** | March 6, 2024 | **ADVERSARY NO.** | |
| **CASE TITLE** | Michael J. Cashion | | |
| **TITLE OF ORDER** | Order granting motion for sanctions | | |

**DOCKET ENTRY TEXT**

The motion of Michael J. Cashion for sanctions against Peter Shagory for violating the discharge injunction is granted. Cashion's affidavit supporting his request for an award of attorney's fees is due on or before March 20, 2024.

[For further details see text below.]

**STATEMENT**

Before the court for ruling is discharged debtor Michael Cashion's motion for sanctions against Peter Shagory, a creditor. Cashion says Shagory should be sanctioned because he sued Cashion in the state court to enforce a discharged debt, violating the Bankruptcy Code's discharge injunction.

For the reasons below, Cashion's motion will be granted. He will be allowed to submit an affidavit supporting his request for the attorney's fees he incurred defending Shagory's state court action and for pursing his motion here.

**1. Jurisdiction**

This court has subject matter jurisdiction of the bankruptcy case under 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). A motion to enforce the discharge injunction is a core proceeding. 28 U.S.C. §§ 157(b)(2)(A), (O); *Conseco, Inc. v. Schwartz (In re Conseco, Inc.)*, 330 B.R. 673, 681-82 (Bankr. N.D. Ill. 2005).

**2. Background**

The background facts come from the court's earlier decision in *In re Cashion*, No. 21 B 8085, 2022 WL 1180103 (Bankr. N.D. Ill. Apr. 21, 2022), the parties' papers, the docket in

## STATEMENT

Cashion's bankruptcy case, and the state court's docket.[1] No facts are in dispute, and no evidentiary hearing is necessary.

### a. The First Two State-Court Actions

In 2019, Cashion borrowed $10,000 from Shagory, giving Shagory a promissory note payable in thirty days. Before the thirty days had run, Cashion wrote Shagory a check for the full loan amount. The check bounced. With the loan unpaid, Shagory sued Cashion on the note in the state court and obtained a default judgment. When Shagory later learned that the account on which Cashion had written the check had been closed even before Cashion signed the note, Shagory sued again, this time for fraud, and obtained another default judgment.

### b. The Bankruptcy Case

In July 2021, Cashion sought protection under chapter 7 of the Bankruptcy Code. The first date set for the creditors meeting under section 341 was July 22. That made September 20 the deadline for creditors to object to Cashion's discharge under section 727 and the dischargeability of debts under section 523(c)(1). Fed. R. Bankr. P. 4004(a), 4007(c).

About a month post-petition, Cashion's lawyer approached Shagory's lawyer and suggested settling Shagory's claim. She proposed having an order entered declaring Cashion's debt nondischargeable. The idea was to avoid the trouble and expense of a formal adversary proceeding under section 523(a). Shagory agreed, and in mid-September Cashion moved to have this court enter an agreed order declaring Cashion's debt to Shagory nondischargeable under section 523(a)(2)(A).

On the motion's September 20 presentment date, though, the court refused to enter the order, explaining that there were only two ways a debt can survive the discharge: either (1) an adversary proceeding results in a judgment declaring the debt nondischargeable, or (2) the debtor signs a reaffirmation agreement that complies with section 524(c) and Bankruptcy Rule 4008. The parties' agreed order, the court explained, was effectively a reaffirmation agreement that lacked the safeguards built into the Code for reaffirmed debts, a middle ground that does not exist. *Cashion*, 2022 WL 1180103, at *1.

With the two alternatives laid out, Cashion agreed that same day to reaffirm the debt, and the parties signed a reaffirmation agreement. Cashion's lawyer filed the signed agreement several days later.

---

[1] This court can take judicial notice of its own docket and the dockets of other courts in related matters. *In re Gomez*, 655 B.R. 738, 740 (Bankr. N.D. Ill. 2023).

## STATEMENT

Because no party in interest had objected to Cashion's discharge by the deadline under Rule 4004(a), the clerk entered Cashion's discharge the next day, September 21. The deadline for Shagory or Cashion to appeal the court's September 20 order was October 5. Fed. R. Bankr. P. 8002(a)(1). No one appealed.

On November 5, 2021, Cashion exercised his rescission rights under section 524(c)(4) and rescinded the reaffirmation agreement. With the deadlines under Rules 4004(a) and 4007(c) long past and Cashion's discharge entered, it was too late for Shagory either to object under section 727 to Cashion's discharge or object under section 523(c)(1) to the dischargeability of his debt. Cashion's debt to Shagory was discharged.

### c. The Rule 60(b) Motion

Two months later, Shagory moved under Rule 60(b) (which applies in bankruptcy cases through Bankruptcy Rule 9024) for relief from the September 20 order. Shagory argued that the court erred in refusing to enter the agreed order declaring the debt nondischargeable.

Shagory's motion was denied for two reasons. First, the court said, legal error supplied no basis for relief under Rule 60(b). *Cashion*, 2022 WL 21180103, at *2-3.[2/] And second, there had been no error: the September 20 order was correct. The two methods this court described on the presentment date – an adversary proceeding resulting in a judgment or a reaffirmation agreement – "are the *only* ones through which a creditor can have a section 523(c) debt excepted from discharge." *Id.* at *4 (citing *In re Maiers*, No. 17-70869, 2017 WL 5033660, at *4 (Bankr. C.D. Ill. Oct. 31, 2017)). "A stand-alone agreed order declaring a debt nondischargeable, the route Shagory and Cashion took here, is not an option." *Id.*

The deadline for Shagory to appeal the order denying his Rule 60(b) motion was May 5, 2022. Again, Shagory did not appeal.

### d. The Third State-Court Action

Instead, he sued Cashion in the state court a third time. In his new complaint, Shagory sought to enforce what he claimed was a post-petition "settlement agreement" with Cashion. Shagory detailed his lawyer's conversations with Cashion's lawyer during the bankruptcy case; the proposal of a possible settlement (including a payment plan) to avoid the expense of an adversary proceeding; and the preparation of a "draft repayment agreement" under which Cashion would repay his prepetition debt. (According to Shagory, he later "also" agreed to a reaffirmation agreement.) Count I of the complaint alleged that Cashion had made no payments

---

[2/] That was true at the time. *See Jones v. Ramos*, 12 F.4th 745, 749 (7th Cir. 2021). It no longer is. *See Kemp v. United States*, 596 U.S. 528, 534-39 (2022).

## STATEMENT

and so had breached the written settlement agreement. Alternatively, Count II alleged that the parties at least had an oral settlement agreement that Cashion had breached.

At first, Cashion tried to defend the new action on his own, but he ran into trouble when he failed to answer Shagory's discovery. In July 2023, a new lawyer appeared for Cashion and answered the outstanding discovery.

The parties then cross-moved for summary judgment. Shagory maintained that his alleged settlement agreement with Cashion was separate from the rescinded reaffirmation agreement and so was enforceable. Cashion, on the other hand, argued that his debt to Shagory had been discharged. As for the settlement agreement, he contended that (a) any post-petition agreement calling for a debtor in bankruptcy to pay a prepetition debt is a reaffirmation agreement; (b) the settlement agreement fit that description and had to comply with the Code; and (c) because it did not, the settlement agreement was unenforceable.

In November 2023, the state court agreed with Cashion that his debt to Shagory had been discharged and awarded Cashion summary judgment. Shagory moved for reconsideration, but his motion was denied.

### e. The Motion for Sanctions

After the state court's summary judgment ruling but before the reconsideration motion, Cashion moved in this court to reopen his chapter 7 case and sought sanctions. Cashion argues in his sanctions motion that Shagory's third action against him sought to recover a discharged debt and so violated the discharge injunction in section 524(a)(2). The case was reopened to allow the parties to brief the sanctions question. Shagory opposes Cashion's motion.

### 3. Discussion

Cashion is right. His debt to Shagory, which was neither excepted from discharge under section 523(c)(1) nor validly reaffirmed, was discharged in 2021. The "settlement agreement" Shagory alleged in his third state-court action was a reaffirmation agreement but did not comply with section 524(c) of the Code and was unenforceable. The action to enforce it violated the discharge injunction, and Shagory's pursuit of it was contempt.

### a. The Debt Was Discharged

A debtor files a chapter 7 bankruptcy case to get "a fresh start in life, free from debts." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 (2018); *see also Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 390 (2023). The Code provides that fresh start through the discharge, 11 U.S.C. § 727(a), which eliminates the debtor's personal liability for debts owed when the case was filed, *see* 11 U.S.C. § 524(a). The Code enforces the discharge through a permanent statutory injunction that bars "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any

-4-

## STATEMENT

such debt." 11 U.S.C. § 524(a)(2); *see also Coughlin*, 599 U.S. at 390.

Not all debts are discharged, though. Debts can survive the discharge (and avoid the discharge injunction's effect) in two ways. First, the debts may be debts "of a certain character" excepted from discharge in sections 523(a)(1)-(19), 11 U.S.C. §§ 523(a)(1)-(19). *Appling*, 584 U.S. at 715. Three of the exceptions – in sections 523(a)(2), (4), and (6) – are subject to the bankruptcy court's exclusive jurisdiction. 11 U.S.C. § 523(c)(1). Dischargeability must be decided through an adversary proceeding, Fed. R. Bankr. P. 7001(6), and the proceeding must be filed before the deadline in Bankruptcy Rule 4007(c), Fed. R. Bankr. P. 4007(c). Other dischargeability exceptions can be decided at any time in either the bankruptcy court or some other court. *Harshaw v. Harshaw (In re Harshaw)*, 26 F.4th 768, 776 (7th Cir. 2022) (noting that "bankruptcy courts and state courts exercise concurrent jurisdiction to determine whether a debt is dischargeable" under those exceptions).

Second, the debtor may agree with a creditor to repay a debt that would otherwise be discharged. A debtor's agreement to repay a dischargeable debt is called a "reaffirmation agreement," *see Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 912 (7th Cir. 2001), and the Code strictly polices agreements of that kind. Among other things, the agreement must be made before the discharge, it must be filed with the bankruptcy court, and the debtor must receive specific disclosures before signing it. 11 U.S.C. §§ 524(c)(1)-(3); *In re Turner*, 156 F.3d 713, 718 (7th Cir. 1998). Otherwise, the agreement is unenforceable. 11 U.S.C. § 523(c); *Turner*, 156 F.3d at 718 (noting that the statutory requirements "must be complied with in order for a reaffirmation agreement to be deemed binding").

Cashion's debt to Shagory was discharged because Shagory pursued neither avenue. Shagory maintained that Cashion's debt was one for money obtained through fraud, but that exception to discharge – in section 523(a)(2)(A) – required the bankruptcy court's adjudication through a timely filed adversary proceeding. 11 U.S.C. § 523(c)(1); Fed. R. Bankr. P. 4007(c). Shagory filed no adversary proceeding; the deadline to file one passed on September 20, 2021. And although Cashion signed an agreement on September 20 to reaffirm the debt, and the agreement met nearly all the requirements under section 524(c), one requirement is that the debtor not have "rescinded [the] agreement . . . within sixty days after [the] agreement is filed with the court." 11 U.S.C. § 524(c)(4). Cashion filed the agreement on September 30 and rescinded the agreement on November 5, thirty-six days later.

With the agreement rescinded, Cashion's debt was discharged. The discharge injunction blocked Shagory from pursuing an action to collect it. 11 U.S.C. § 524(a)(2); *Coughlin*, 599 U.S. at 390.

### b. The Third State-Court Action Violated the Discharge Injunction

Because Cashion's debt had been discharged, the third state-court action Shagory filed to collect the debt violated the discharge injunction.

-5-

**STATEMENT**

Shagory's complaint in the action alleged the same $10,000 debt arising out of the 2019 loan he had made to Cashion and the promissory note Cashion had signed. The complaint also alleged the first and second actions Shagory had filed in the state court to collect the debt. The complaint then alleged that after Cashion filed his chapter 7 case, Shagory reached an agreement with Cashion (through counsel) under which Cashion would pay his prepetition debt, and Cashion had never made a payment, breaching the agreement. Shagory's third state-court action was thus "an action . . . to collect . . . any such debt" (meaning a "debt discharged under section 727," 11 U.S.C. § 524(a)(1)) "as a personal liability of the debtor" and was subject to the discharge injunction. 11 U.S.C. § 524(a)(2). Filing the action violated the injunction. *Cox*, 239 F.3d at 915 (noting that "the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction").

Shagory, though, disagrees. He argues that in his third action he sued only for breach of his settlement agreement with Cashion. The settlement agreement was a post-petition agreement, he says, and so Cashion's debt resulting from his breach was a new, post-petition debt and was not discharged. (Resp. at 7-8).

Shagory has the timing right, but that is all. His argument ignores the substance of the settlement agreement. He may have reached that agreement with Cashion *post-petition*, but it obligated Cashion to pay a *prepetition* debt, one that was dischargeable. The agreement was thus a reaffirmation agreement (that is, an agreement to pay a discharged or dischargeable debt) and had to comply with the Code. Because it did not, the agreement was unenforceable. *Cox*, 239 F.3d at 912 (stating that "such an agreement is enforceable only if all the statutory conditions are satisfied"); *Turner*, 156 F.3d at 718; 4 *Collier on Bankruptcy* ¶ 524.04 at 524-48 (Richard Levin & Henry J. Sommer, eds., 16th ed. 2023) ("If an agreement to pay a discharged or dischargeable debt does not meet the requirements of subsections (c) and (d), it is without legal effect."); 2 *Ginsberg & Martin on Bankruptcy* § 11.08[A] at 11-258 (Catherine J. Furay, ed., 6th ed. 2022).

Shagory also seems to believe that the agreement was not a reaffirmation agreement because it was a settlement agreement. (Resp. at 8).[3/] Terming the agreement a "settlement

---

[3/] Shagory also claims the settlement agreement was supported with what he calls "new consideration." (Resp. at 8). Nowhere does he describes what that "new consideration" was, but it would make no difference. Nearly all decisions on the question recognize that "new consideration" cannot validate a non-complying reaffirmation agreement. *See, e.g., SMS Fin. JDC, LP v. Cope*, 685 F. App'x 648, 653-54 (10th Cir. 2017); *In re American Rice, Inc.*, 448 F. App'x 415, 420 (5th Cir. 2011) ("Many courts have . . . considered and rejected the 'new and independent consideration' exception."); *In re Lopez*, 274 B.R. 854, 860-61 (B.A.P. 9th Cir. 2002); *Gray v. Nusssbeck (In re Gray)*, 573 B.R. 868, 872 (Bankr. D. Kan. 2017); *Weeks v. Isabella Bank Corp. (In re Weeks)*, 400 B.R. 117, 121-22 (Bankr. W.D. Mich. 2009); *In re Zarro*, 268 B.R. 715, 720-21 (S.D.N.Y. 2001); *Liptz & Roberts, Chartered Pension Plan Trust v.*

STATEMENT

agreement," though, does not allow it to escape section 524(c). Again, the substance of the agreement was to have Cashion pay Shagory a prepetition debt, and the agreement's substance is what matters, not its title. *See Bridge v. McHenry Truck Lines, Inc.*, No. 96 C 4628, 1998 WL 427611, at *4 (N.D. Ill. July 24, 1998) (declaring it "well established that the legal effect to be given an instrument is not to be determined by the label which it bears" (internal quotation omitted)). Courts strictly enforce sections 524(c) and (d) precisely "to ensure that they are not evaded by agreements that, though not labeled as reaffirmations, have the effect of waiving the protections of the discharge." 4 *Collier on Bankruptcy*, *supra*, ¶ 524.04 at 524-48. A reaffirmation agreement that violates the Code is no more enforceable because it calls itself a "settlement agreement." *See, e.g., In re Bagbag*, 595 B.R. 164, 170 (Bankr. S.D.N.Y. 2018); *Zarro*, 268 B.R. at 720; *In re Cruz*, 254 B.R. 801, 813-15 (Bankr. S.D.N.Y. 2000).

Because Shagory filed the third state-court action to collect a discharged debt, the action violated the discharge injunction in section 524(a)(2).

### c. Filing The Third State-Court Action Was Contempt

That leaves the question of contempt. Contempt is "a standard remedy for violation of an injunction." *Chrysler Motors Corp. v. International Union, Allied Indus. Workers of Am.*, 909 F.2d 248, 250 (7th Cir. 1990). So Shagory's filing and pursuing an action in violation of the discharge injunction was contempt, *Pucillo v. National Credit Sys., Inc.*, 66 F.4th 634, 642 n.4 (7th Cir. 2023); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004), unless he had some objectively reasonable basis for concluding that doing so would be lawful, *Taggart v. Lorenzen*, ___ U.S. ___, 139 S. Ct. 1795, 1799 (2019); *In re Kimball Hill, Inc.*, 61 F.4th 529, 534 (7th Cir. 2023).

He had none. The action plainly sought to enforce an agreement for Cashion to pay a prepetition debt. Because it did, the discharge injunction plainly barred the action. Shagory insists he had a "good-faith legal argument" for filing the action because, he says, his research turned up no "case law that explicitly . . . disagreed" with his theory. (Resp. at 1). But his research was not up to snuff. Even a quick glance at the leading bankruptcy treatise would have shown him that any post-petition agreement to pay a discharged or dischargeable debt, whether or not it calls itself a "reaffirmation agreement," must satisfy section 524(c); otherwise, the agreement is unenforceable. 4 *Collier on Bankruptcy*, *supra*, ¶ 524.04 at 524-48. And even a short excursion into the case law would have uncovered cases holding unenforceable post-petition settlement agreements like the one he alleged. *See, e.g., Bagbag*, 595 B.R. at 170. Shagory cites nothing to support the supposed "good faith" of his theory. His violation of the discharge injunction was "flagrant." *Kimball Hill*, 61 F.4th at 534.

---

*Stevens (In re Stevens)*, 217 B.R. 757, 761 (Bankr. D. Md. 1998). The reason: section 524(c) defines a reaffirmation agreement as one for which the consideration is based "in whole *or in part*" on a dischargeable debt. 11 U.S.C. § 524(c) (emphasis added).

**STATEMENT**

Civil contempt's function is compensatory as well as coercive, *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010), and in the right case the court can award an aggrieved party actual damages and attorney's fees, *see F.T.C. v. Trudeau*, 579 F.3d 754, 769 (7th Cir. 2009); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999). Punitive damages, though, are unavailable. *In re Ranieri*, 598 B.R. 450, 459 (Bankr. N.D. Ill. 2019).

Cashion asks only for his attorney's fees: $18,900 incurred in the state court and $3,122.50 incurred here. A fee award is discretionary with the court. *Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005). As with attorney's fees in other contexts, fees for contempt are calculated under the "lodestar" method – multiplying "the hours reasonably expended by a reasonable hourly rate." *Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347, 351 (7th Cir. 2018). Cashion has given only the lump sums and furnished no information about hourly rates or hours expended. He will be given a chance to file a supporting affidavit with that information. The affidavit must attach an itemization showing the time spent (in tenths of an hour) and tasks performed. (An itemization that complies with L.R. 5082-1(C) will do.)

### 4. Conclusion

The motion of Michael J. Cashion for sanctions against Peter Shagory for violating the discharge injunction is granted. Cashion's affidavit supporting his request for an award of attorney's fees is due on or before March 20, 2024.

Dated: March 6, 2024

                                             A. Benjamin Goldgar
                                             United States Bankruptcy Judge